Judge Underwood,
dissenting from the reasoning and decision of the majority of the court, in this case, read the following Opinion.
Parks &c. as executors of Walker, sold the land upon which their testator lived and died, by executory eon-tract, in 1800, to Ogden. The title was supposed, by *254 the parties, to be in Montgomery, who had contracted with Walker ; they, therefore, in substance, stipulated, that if the executors cannot make a title in fee simple w^ien Ogden pays fifty pounds, and gives his note for fifty seven pounds, (which acts were to be performed in four months,) he is to continue in possession of the land, and have the emoluments by' paying interest on the money which Walker had actually paid Montgomery for the land. Ogden was thus to have the use of the land, and pay interest as above on one hundred and seven pounds, until the executors might think proper, thereafter, to assign him a bond on Montgomery for the title, and also to transfer a lease to Ogden, which they held, and which Montgomery probably gave their testator, before the land was sold to him. This stipulation to pay interest, would seem to give ground for the inference, that Ogden was not to pay the fifty pounds, and give his note for the fifty seven pounds, if he could not get a title ; and the statement that he was to pay interest 'until the title bond and lease were transferred to him, indicates that the interest was to cease at that time, and he was then to pay the fifty pounds, and give his note for the fifty seven pounds, and look to Montgomery for the title. This view of the-contract is fortified by another stipulation, which it contains, binding Ogden to pay a balance of seventy three pounds due Montgomery,when he should make the title. If Ogden did.not, in four months, tender a compliance with the contract, as purchaser, then he was to hold the land as a renter, and pay so much corn per acre. The above is my understanding of the intention of the parties, to be collected from one of the most awkwardly drawn written instruments that T have seen.
Under the foregoing contract, Ogden entered ; upon the contract he paid one hundred and seven pounds ; and upon the contract, he recovered it back with interest, in an action at law, because the executors had neither made him a title for the land, nor assigned him the bond on Montgomery, nor the lease. To enjoin this judgment, the executors filed their bill, in Bourbon, where the judgment was rendered, although the land is situated in *255 Shelby; and they pray that Ogden may be compelled to restore to them the possession, and to allow a credit against the judgment, for the value of the use and occupation while Ogden held the land.
The first question made in behalf of Ogden, is, that the ehancellqr had no jurisdiction to enjoin the judgment at law, for the purpose of setting off rents against it, in such a case. I think otherwise. Ogden has chosen to put an end to the contract by obtaining a judgment for his purchase money and interest. If he had proceeded in chancery, for a specific execution, and had there rescinded the contract, what would the chancellor have done ? He would have placed the parties in statu quo, as far as he had power ; and in so doing, he would have required Ogden to restore the land, and account for rents and waste, receiving a credit for lasting and valuable improvements.— Griffith vs. Depew &c. 3 Mar. 177. Ewing's heirs vs. Handley's ex'crs. 4 Lit. Rep. 371. The rents of the land during Ogden’s occupancy, constitute an equitable set off against the interest of the money which Ogden has recovered. The land and its profits were the consideration on one side ; the money and its interest the consideration on the other. There was such a connection, therefore, between the demands, as authorized the chancellor to take jurisdiction, for the purpose of making the set off. This is the necessary result of the principles settled in the cases of Tribble vs. Taul, 7 Mon. 455, and Burnham vs. Oldham &c. Ibid. 653. A court of law would be altogether inadequate to afford redress, and do complete justice between the parties. At law the vendee is entitled to his money and interest, for a breach of the vendors covenant; and I know of no case where the vendor has. been permitted to set off the unliquidated rents, at law. If he were to attempt it, the vendee would have a right to counteract the defence, by his claim for improvements ; and thus these unliquidated demands would be brought into litigation before the common law judge, contrary to all precedent. But if the common law courts could afford redress, as it is clear, under the -cases cited, that the chancellor may also give it, it would only follow, that the jurisdiction was concurrent; and as *256 tlie executors did not defend at law, so as to obtain the set off, they may now go into chancery for that purpose. 2 Bibb, 5, and 200. 5 .Mon. 394.
As executors a clear right to go into chancery, to obtain an allowance for rent; and I think, likewise, to suspend the collection of the judgment at law .until Ogden did justice by surrendering the entire consideration he had received ; for surely it cannot .be pretended, that he is to get his money and its interest back, and keep the land and its profits besides, thereb) leaving the estate of Walker, to sustain an entire loss of the sum paid to Montgomery — the next question is, to what court should they make application ? Strother &c. vs. Cardwell's administrators, 2 J. J Mar. 354, furnishes a complete and satisfactory answer. In that case, the land about which the litigation arose,was situated in Gallatin county ; the judgment was obtained in Shelby county* and the circuit court of Shelby granted the injunction. The case of Mason vs. Chambers, 4 J. J. Mar. 409, is also in point, upon this subject. These cases prove that the court in the county where the judgment is rendered, is the onlv proper court to deride the merits of a bill en» joining the judgment; and that in disposing of the case finallv, the court in which the judgment has been rendered, may settle and adjust all matters between the parties, incidental to, and connected with, the judgment enjoined, without regard to their locality. In Mason vs. Chambers, a judgment of another circuit was perpetually enjoined, because of its connection, as an incident, with the main subject of controversy.
It is, therefore, my opinion that the Bourbon circuit court ought to proceed, and settle the entire controversy between.these parties, by taking an account of rents, improvements and waste, and upon a settlement of the accounts, Ogden should he compelled to surrender the possession of the land to the executors.
I deem it useless to cite cases to prove, that Ogden cannot be permitted to set up a title acquired from Sprigg, unless he had shewn more than the present record exhibits. The rule cannot operate more severely upon him* than it was made to operate upon Brook's heirs, at the suit *257 of Beal, (mannscript decision.) If he suffers, it is in consequence of his own wrong. It would be iniquitous to permit him to hold the land, and thereby throw a loss upon Walker’s estate equal to the amount paid to Montgomery : to wit, one hundred and seven pounds, which Walter’s executors may have no means to recover, unless thev can obtain the land. They are without indemnity, therefore, unless they can be placed in statu quo.
But my brethren say they may resort to their action, of ejectment, and recover possession. Ogden may then enjoin, and then the chancellor may put an u equitable end to the whole controversy.” The opinion intimates that there may be circumstances which would justify Ogden in purchasing 'Spring’s paramount title, and setting it up for himself. If there be any such circumstances, then I am of opinion, that his possession, after the acquisition of Spring’s title, was adverse to the claim of Walker’s executors, and that he would have a right to relv on his title and possession, in bar of the action of ejectment. I cannot understand the propriety of the doctrine which justifies a man in making a purchase of the better title and then, when he wants to use it for his protection, refuses to let him to do so, unless he resorts to chancery. There is no necessity for taking such a circuitous course, unless it be in the hope that it may lead to the finding of that justice, in behalf of Walker’s executors,which is now denied to them. If Ogden should defeat their recovery at law, then they will have lost their land, lost the money paid to Montgomery, and be comjielled to pay Ogden the amount of his judgment !
My brethren will not allow Walker’s executors to appeal to the chancellor, for the purpose of setting off rents against the interest of the money recovered by Ogden, because, they say, “ the rents were liquidated by the covenant, and there can be no doubt that an action at law upon that express agreement, could be maintained, for recovering the amount so stipulated by the parties.” I have a very different opinion. As I understand the contract, if Ogden paid the money (fifty pounds) and gave his note for fifty seven pounds, within four months, and got a title, then the contract would have been executed, *258 and he would not be bound to pay interest to Walker’s executors; but if he could not get a title, on tendering performance on his part, in proper time, then he was not bound to pay his money, but might remain in possession of the land, by paying interest, until the title bond of Montgomery, and the lease were made ov.er to him, at a future day. Now, Ogden chose to pay the money, although he did not get a title. Having done so, I cannot perceive the least propriety in giving that construction to the contract which will bind him to pay interest on money in the hands of the executors. If the money had remained in Ogden’s hands, there would have been some reason for it; but when he pays the money over, there is no longer any reason for it, and if it be tolerated, it will be the first case I have ever known, where one man is made to pay interest for money in another pocket, and exclusively subject to the use and control of the latter. So far from finding in the contract, any thing to sanction so strange a result, I think the transaction between the parties, after Ogden paid the money, should be looked upon as the common case where a purchase of land is made, and the purchase money is, in part or whole, paid over to the vendor.
When the parties shall reinvestigate these matters, in the suit in chancery instituted by Ogden, if he should be evicted, I perceive great diffiuclty in allowing Walker’s •éxecqfbrs again to bring forward their claim for rents, which they have unsuccessfully asserted in this suit. Will, they not be barred ? Or have they any such claim under the opinion delivered ? Will they not, under that . opinión, be driven to their action at law, on the old covenant, to get from Ogden interest on money which they had the use of?
But the reversal of the decree, and dismission of the bill is, to me, contrary to usage. Ogden does not complain, nor does he ask a reversal. Under such circumstances, the practice heretofore has been, to affirm the case, if the appellant, or plaintiffs in error, have failed to shew that they have been prejudiced. If the proceedings in this case, as they relate to the question of restoration, are coram nonjudice; if they be void in that aspect? *259 Because that is a local matter, then Walker’s executors might proceed with their action of ejectment, without any reversal. I shall not enquire whether the proceedings, under the view taken of them in the opinion, should be considered as void, or voidable; I perceive that the parties are just at the threshold of the controversy, and unless they should be induced to compromise, and settle it upon equitable terms, they have a protracted litigation before them, and an uncertain result.
My regret is, that this court has opened the door for future strife, instead of remanding the cause, and having 3t ended upon the principles which I have laid down.